Gerard R. Bosch (WBA #6-3220)
M. Alison Floyd (WBA #7-4825)
Law Offices of Jerry Bosch, LLC
P.O. Box 872
Wilson, Wyoming 83014
250 Veronica Lane
Jackson, WY 83002
307.734.9778
307.734.9785 Facsimile
jerry@wyo-law.com
alison@wyo-law.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2012 JUN 26  AM 10 05
STEPHAN HARRIS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TOBE MORROW, | |
| Plaintiff, | Civil Action No: 12 cv 141-J |
| v. | |
| XANTERRA PARKS & RESORTS, ANDREW TODD, JOHN DOES I-IV | |
| Defendants. | JURY TRIAL DEMANDED |

COMPLAINT

NOW COMES, Plaintiff by and through undersigned counsel, and for his cause of action against Defendants, states and alleges as follows:

## I. PARTIES

1. At all times material to Plaintiff's Complaint, Plaintiff was and is a resident of Lake City, Columbia County, State of Florida.

2. At all times material to Plaintiff's Complaint, Defendant Xanterra Parks and Resorts, Inc. (Xanterra) is a for-profit corporation registered in the State of Delaware with a principal place of business listed in Greenwood Village, Colorado

3. At all times material to Plaintiff's Complaint, Defendant Andrew Todd (Todd) is and was a resident of Greenwood Village, Colorado and doing business within the state of Wyoming as Xanterra.

4. At all times material to Plaintiff's Complaint, Defendant Andrew Todd (Todd) is and was the president and director of Xanterra.

5. Upon information and belief, at all times material to Plaintiff's Complaint, Defendants John Does I-IV are and were residents of the State of Wyoming.

## II. JURISDICTION AND VENUE

6. All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

7. This action is brought pursuant to 28 U.S.C. §1332. The parties are residents and citizens of different states and the amount in controversy is in excess of Seventy-Five Thousand ($75,000.00). This Court has proper jurisdiction.

8.  Pursuant to 28 U.S.C. §1391, venue for this action is in the United States District Court for the District of Wyoming as the claims arose in this judicial district and the acts and omissions complained of occurred within the District for Wyoming. This Court has proper venue.

### III. FACTS COMMON TO ALL CAUSES OF ACTION

9.  All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

10. Xanterra Parks and Resorts (Xanterra) is the nation's largest park-management company with operations throughout the country.

11. Xanterra operates a variety of concessions in Yellowstone National Park, located in the States of Wyoming and Montana.

12. One of these operations is the Roosevelt Old West Dinner Cookout. Participants ride from the Roosevelt Corrals to a cookout in Pleasant Valley on horseback or in a covered wagon.

13. The ride is supposed to take 3-4 hours with dinner included.

14. Plaintiff and three friends reserve spots for the Roosevelt Old West Dinner Cookout for the evening of July 6, 2010.

15. A motor cycle accident backs up traffic in the Park and causes Plaintiff and his friends to arrive late for their scheduled leave time.

16. The guides allow the group to still participate without giving them an orientation. The orientation includes a list of prohibited items.

17. Plaintiff and his girlfriend Gail ride to the cookout on horseback.

18. Plaintiff is riding a horse named Dually.

19. The weight limit for participants on horseback is 240 lbs. Plaintiff weighed 250 lbs.

20. The other members of the group, Dr. Martha Cox and her husband Ken Cox, ride to the cookout in a covered wagon.

21. It is a chilly evening so Plaintiff is wearing several layers of clothes, including a light windbreaker.

22. The wranglers and/or guides do not give Plaintiff and Gail the same warnings other riders were given during orientation.

23. Plaintiff is told he cannot have a camera or loose clothing while riding the horse.

24. At no time is Plaintiff told he cannot bring a water bottle on the horse with him.

25. The ride to the cookout location takes a little over an hour.

26. Several times during this ride, Plaintiff sips from his water bottle. Dually does not react to Plaintiff sipping his water.

27. Two of the wranglers and/or guides see Plaintiff sipping from his water bottle on the way to the cookout, but take no action regarding the water bottle.

28. Plaintiff is still not told he cannot have a water bottle with him.

29. After the cookout, Plaintiff is the last person in line for the bathrooms. He waits until the line shortens because he has a broken ankle.

30. While Plaintiff is in the bathroom, the wranglers give the other participants a reminder of the prohibited items.

31. Again, Plaintiff is not told that he cannot have a water bottle with him.

32. The head wrangler is upset with Plaintiff for slowing down the group and chastises him in front of the whole group for taking so long.

33. After Plaintiff is back on his horse, the head wrangler notices the water bottle.

34. She moves alongside Dually and grabs his reins.

35. She demands that Plaintiff hand over the water bottle and Plaintiff complies.

36. The head wrangler then begins waiving the water bottle around above her head. She grips the bottle with enough force to cause the bottle to make a loud crinkling noise.

37. At this point, Dually becomes spooked by the crinkling sound and jerks to the right.

38. Dually bucks twice. The first time, Plaintiff falls out of the saddle. The second time, Plaintiff is knocked to the ground.

39. Plaintiff is knocked unconscious and lands face down on the ground. He is not breathing at this point.

40. The wranglers and/or guides are not adequately prepared to deal with the emergency. There is a first aid kit with minimal supplies. There is no face mask for CPR.

41. Nor are the wranglers and/or adequately trained to deal with the emergency.

42. Fortunately for Plaintiff, a surgeon and a nurse are participants in the group. They realize the gravity of the situation, in that Plaintiff is not breathing, lying face down on the ground and is beginning to turn blue. They both step forward and instruct others on how to turn Plaintiff over in a safe manner in the event there is spinal injury.

43. Because the inadequate first aid kit does not contain a mask, the nurse begins mouth to mouth resuscitation on the still not breathing Plaintiff. After three minutes without oxygen, the nurse is finally able to revive Plaintiff.

44. These two strangers stabilize Plaintiff until Yellowstone National Park EMS arrive.

45. Plaintiff is transported to the Mammoth helispot and airlifted to the Eastern Regional Medical Center in Idaho Falls, Idaho.

46. Plaintiff is admitted to the intensive care unit with a clinical impression of: closed head injury with loss of consciousness, left distal radius fracture, multiple rib fractures, acute pain in chest and wrist and multiple superficial abrasions.

## IV. CAUSES OF ACTION

### COUNT I – NEGLIGENT MISREPRESENTATION

47. All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

48. Defendants actively solicited and invited members of the general public to participate in the Roosevelt Old West Dinner Cookout, supervised and promoted by the same Defendants.

49. Upon information and belief, Defendants solicited and promoted their horseback rides through the internet, print, their employees and agents, and word of mouth.

50. Defendants should have known that members of the general public, like Plaintiff, would rely on the information provided by Defendants in making a decision whether to participate in a horseback ride provided by Defendants.

51. Defendants should have known that Plaintiff would rely upon the knowledge, expertise, experience and discretion of Defendants to provide safe horses and other equipment and conduct the horseback ride in a manner that was safe to Plaintiff.

52. Defendants have a pecuniary interest in the horseback rides they provide, including the Roosevelt Old West Dinner Cookout.

53. Plaintiff reasonably relied on the information provided to him by Defendants in making his decision to participate or not participate in the Roosevelt Old West Dinner Cookout.

54.     Specifically, Plaintiff relied on Defendants' information that the intensity level of the ride was "easy" and that the only prohibitions were "no loose clothing" and "no cameras" on the horses.

55.     Defendants negligently made representations to the general public including Plaintiff.

56.     Plaintiff suffered harms and losses as a direct result of these representations that were a direct result of Defendants' negligence.

57.     The harms and losses suffered by Plaintiff are more specifically set forth in the section below entitled "Damages" which section is hereby incorporated by reference.

## COUNT II – NON DISCLOSURE

58.     All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

59.     Defendants operate a business that includes guided horseback rides on lands owned by the United States pursuant to a Concessions Contract.

60.     Defendants further enjoy a position of superior knowledge as to the risks, hazards and dangers associated with horseback riding.

61.     Plaintiff, his friends, and other business invitees of the general public rely on Defendants to, among other things, inform them of the hazards, risks and dangers associated with horseback riding.

62. Defendants have a duty under Defendant Xanterra's Concession Contract to advise visitors of the risks, hazards and dangers associated with horseback riding.

63. Defendants failed to exercise reasonable care in insuring Plaintiff was aware of the risks, hazards and dangers associated with horseback riding.

64. Specifically, Defendants failed to disclose the risks, hazards and dangers associated with but not limited to the following:

   a) Carrying a water bottle on the horseback ride;

   b) Carrying backpacks, fanny packs or purses;

   c) Carrying a cell phone on your person;

   d) The unpredictable behavior of a horse because of the above listed items.

65. Defendants further failed to disclose to Plaintiff that a possible result of the horseback ride from Roosevelt corrals to the cookout sight and back was severe physical injury or death.

66. Defendants' failures in disclosing this material information was a breach of duty of due care to its business invitees, each of whom spend money for the expertise and knowledge of Defendants.

67. As a direct result of this breach of duty, Plaintiff carries prohibited items with him to and from the cookout location while riding Defendants' horse, Dually, that results in him suffering harms and losses.

68.    The harms and losses suffered by Plaintiff are more specifically set forth in the section labeled "Damages" which section is hereby incorporated by reference.

## COUNT III – NEGLIGENT SUPERVISION AND TRAINING

69.    All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

70.    At all times material herein, Defendant's negligent supervision and training practices caused the horseback ride to be dangerous beyond what is inherent in a normal horseback ride, by providing untrained and unsupervised guides.

71.    Plaintiff's injuries and resulting harms and losses are the direct and proximate result of the negligent training and supervising practices of Defendants which acts and omissions include, but are not limited to, the following:

a) Defendants failed to supervise the horseback trip – specifically they allowed inexperienced and untrained employees to act as wranglers and/or guides on the ride;

b) Defendants failed to supervise and train their wranglers and/or guides in the necessity of giving each participant the appropriate and necessary disclosures regarding prohibited items;

c) Defendants failed to train and supervise their guides and wranglers in the proper protocol regarding emergencies;

    d) Defendants failed to train and supervise their guides and wranglers in the necessity of providing adequate first aid kits; and

    e) Defendants were otherwise negligent in the supervision and training of their wranglers and/or guides.

72. As a direct result of the negligent training and supervision by the Defendants, Plaintiff suffered harms and losses as more specifically set forth in the section below entitled "Damages" which section is hereby incorporated by reference.

## COUNT V - NEGLIGENCE

73. All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

74. At the time and place of the events described herein, Defendants owe a duty of reasonable care to Plaintiff as patrons of Defendants, to avoid causing injury.

75. Defendants were paid specifically for the element of safety and experience advertised by Defendants who hold themselves out as experienced wranglers and/or guides for horseback rides.

76. At the time and place of the events described herein, Defendants owe a duty of reasonable care to Plaintiff to avoid exposing Plaintiff and others to risks that were atypical, uncharacteristic, not intrinsic to and not inherent in the Roosevelt Old West Dinner Cookout horseback ride.

77.  The risk of serious injury to Plaintiff created by the Defendants was outside the reasonably foreseeable or inherent risks of the Roosevelt Old West Dinner Cookout horseback ride.

78.  At all times material herein, Defendants' negligent acts and omissions expose Plaintiff to risks beyond what is inherent in a normal horseback ride associated with the Roosevelt Old West Dinner, by, among other things:

- Failing to select an appropriate horse for Plaintiff;
- Failing to supervise and train the guides and wranglers in charge of the horseback ride;
- Failure to advise Plaintiff of the risks, hazards and dangers associated with horseback riding;
- Failing to warn Plaintiff of known hazards, such as prohibited items;
- Failing to provide adequate medical care i.e. first aid kits with CPR masks;
- Failing to provide guides and wranglers capable of handling a medical emergency such as the one Plaintiff experienced;
- Failure to warn Plaintiff of hazards of which Defendants had actual or constructive knowledge; and
- Defendants were otherwise negligent.

79.     As a direct and proximate result of Defendants' negligent acts and/or omissions to act, Plaintiff suffered injury and damages as specifically set forth in this Complaint.

## V. DAMAGES

80.     All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

81.     As a direct and approximate result of Defendants' negligent breaches as aforesaid, Plaintiff sustained severe and permanent physical injuries, which have required numerous medical procedures and rehabilitative services. Plaintiff has specifically incurred the following damages for which Defendants are liable to Plaintiff:

- Medical expenses incurred in the past in an amount to be proved at trial, but which exceed the minimal jurisdictional amount of this Court;

- Medical expenses which will be incurred prior to trial and which can reasonably be expected to arise in the future in an amount to be determined at trial;

- Past and future pain, suffering, scarring, emotional distress and loss of use of body, in an amount to be proved at trial;

- Loss of enjoyment of life in an amount to be proved at trial; and

- Costs of this action and for other further relief as the court deems equitable and proper.

## PUNITIVE DAMAGES

82. All of the averments set forth above are incorporated by reference as if set forth in this section in their entirety.

83. The acts, omissions and conduct of the Defendants were intentional, reckless and/or committed in utter disregard for the rights and interests of Plaintiff, and represent such a departure form the ordinary standard of care that they amounted to willful and wanton misconduct that exemplary and punitive damages should be awarded in an amount sufficient to punish this Defendant and to make an example of Defendants to deter similar conduct in the future.

84. As a direct and proximate result of the willful and wanton misconduct of Defendants, Plaintiff suffered damages that are more specifically alleged above and incorporated herein by reference.

WHEREFORE, Plaintiff prays for judgment against Defendants in an amount to be proved at trial, but which exceeds the minimum jurisdictional amount of this Court and for the costs of this action and for such other relief as this Court deems equitable and proper.

Dated this 25 day of June, 2012.

_____
M. Alison Floyd
Law Office of Jerry Bosch, LLC