Angela L. Ekker, Wyo. #5-2474
Lathrop & Gage LLP
US Bank Tower
950 17th Street, Suite 2400
Denver, Colorado 80202
Phone:     (720) 931-3200
Fax:        (720) 931-3201
Email:     aekker@lathropgage.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TOBE MORROW | ) Case No. 12-cv-141-J |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| XANTERRA PARKS & RESORTS | ) |
| ANDREW TODD, JOHN DOES I-IV | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendants Xanterra Parks & Resorts ("Xanterra") and Andrew Todd, by and through their Counsel, Lathrop & Gage, LLP, hereby submit their Brief in Support of Motion to Dismiss Complaint.  In support, Xanterra and Mr. Todd state as follows.

**INTRODUCTION**

This case arises from injuries Plaintiff Tobe Morrow sustained when his horse unexpectedly bucked during a horseback ride through Yellowstone National Park on July 6, 2010, throwing him to the ground.  Mr. Morrow seeks recovery from Defendants under theories

of (1) negligent misrepresentation; (2) nondisclosure; (3) negligent supervision and training; and (4) negligence.  Mr. Morrow also claims he is entitled to compensatory and punitive damages.

Defendants seek dismissal of Mr. Morrow's Complaint because it fails to present claims upon which relief can be granted.  Count I of Mr. Morrow's Complaint, asserting a claim for relief for negligent misrepresentation, cannot apply in light of the nature of the underlying facts.  Also, Wyoming law does not recognize the tort of negligent nondisclosure, warranting dismissal of Count II of the Complaint.  These grounds notwithstanding, *all* of Mr. Morrow's claims, reflected in Counts I – IV of the Complaint, each sounding in negligence, must be dismissed pursuant to the Wyoming Recreation Safety Act, which establishes that Defendants did not owe Mr. Morrow a duty of care.   Further, Mr. Morrow's Complaint fails with respect to punitive damages, as the factual allegations do not establish a plausible claim to the same.  Finally, the Court must dismiss any claims asserted against Xanterra's President, Andrew Todd.  Mr. Morrow presents no specific factual allegations to suggest Mr. Todd was in any way involved in the events underlying this lawsuit, establishing that Mr. Morrow has failed to state a plausible claim against him.  Based on the argument and law set forth below, Defendants ask that the Court dismiss this matter in its entirety.

## LEGAL STANDARDS

Prior to filing a responsive pleading, Defendants are entitled to seek dismissal of this matter if Mr. Morrow's Complaint fails to state claims upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6) (2012).  Toward that end, "a federal court sitting in diversity must

ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

"[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[M]ere 'labels and conclusions,' and 'formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegation to support each claim." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Such allegations must "'raise a right to relief above the speculative level.'"  *Id.*  "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Id.*

## FACTUAL BACKGROUND

1.      During a trip to Yellowstone National Park, Mr. Morrow and three friends reserved spots for the Roosevelt Old West Dinner Cookout for the evening of July 6, 2010. *See* Complaint ¶¶ 12, 14.

2.      The Roosevelt Old West Dinner Cookout originated at Xanterra's Roosevelt Corals in Yellowstone. *Id.* ¶ 12.  The outing consisted of a horseback or covered wagon ride through Pleasant Valley to an area of the Park known as "Cookout", where participants were served dinner. *See id.*

3.      Mr. Morrow rode horseback to Cookout on the evening of July 6, 2010, aboard a horse named "Dually". *Id.* ¶¶ 17-18.

4.    Mr. Morrow brought a water bottle with him on the ride to Cookout. *See id.* ¶ 26. He drank from the water bottle the entire way. *Id.* ¶ 27.

5.    After dinner, wranglers gave the <u>entire</u> ride a reminder about prohibited items, including water bottles. *See id.* ¶ 30. Mr. Morrow however missed this because he was in the bathroom. *Id.* ¶ 29.

6.    After mounting his horse following dinner, wranglers noticed the water bottle, and asked Mr. Morrow to relinquish it. Mr. Morrow complied. *See id.* ¶¶ 33, 35.

7.    The wrangler he gave the bottle to allegedly lifted the bottle over her head, and as she gripped the bottle it made a crinkling sound. *See id.* ¶ 36.

8.    Dually spooked as a result of the crinkling sound. *See id.* ¶ 37.

9.    Dually bucked twice in response to the sound, causing Mr. Morrow to fall from his saddle and to the ground. *See id.* ¶ 38.

## ARGUMENT

## I.    NEGLIGENT MISREPRESENTATION DOES NOT APPLY TO THIS CASE

Under Wyoming law, "[t]he elements of a negligent misrepresentation claim are generally recognized to be as follows: False information supplied *in the course of one's business* for the guidance of others *in their business*, failure to exercise reasonable care in obtaining or relating the information, and pecuniary loss resulting from justifiable reliance thereon. Restatement of Torts (Second) § 552 p. 125 (1977)." *Verschoor v. Mountain W. Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293, 1299 (Wyo. 1995); *Sundown, Inc. v. Pearson Real Estate Co., Inc.*, 8 P.3d 324, 332 (Wyo. 2000) ("The elements of negligent misrepresentation are false

information supplied in the course of one's business for the guidance of others in their business; failure to exercise reasonable care in obtaining or relating the information; and pecuniary loss resulting from justifiable reliance thereon."). As Section 552 provides the basis for this tort, it is clear that the cause of action is specific to scenarios involving business interactions. *See id.* Wyoming has not adopted a generic tort of negligent misrepresentation. *See Willis v. Bender,* 596 F.3d 1244, 1259 n.9 (10th Cir. 2010).

The facts underlying Mr. Morrow's Complaint provide no basis for a negligent misrepresentation claim. Mr. Morrow does not claim he visited the Roosevelt Corals on July 6, 2010 to conduct any business matters with Xanterra. Nor did Xanterra provide him any information for his guidance in conducting his business affairs. The only transaction "at issue" here is Mr. Morrow obtaining recreational horseback riding services from Xanterra. Any information provided toward that end related to maters of leisure, and not business. Simply put, the facts pled do not describe any business interaction, transaction, or relationship between the parties that could support such a claim. As a result, this claim must be dismissed.

## II.   WYOMING DOES NOT RECOGNIZE A CLAIM FOR NEGLIGENT NONDISCLOSURE

Next, Mr. Morrow asserts a claim of "nondisclosure", claiming that Defendants "have a duty" to "exercise reasonable care in insuring Plaintiff was aware of the risks, hazards and dangers associated with horseback riding." Complaint ¶¶ 62-63. Based on its language, the nondisclosure claim is clearly grounded in negligence. In Wyoming, "[d]uty sufficient to support an action for negligence may be engendered by common law, statute or contract."

*Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1325 (Wyo. 1995).   "Wyoming" however, "does not recognize a cause of action for negligent nondisclosure...." *Sundown, Inc.*, 8 P.3d at 332. Therefore, as a matter of law, Mr. Morrow fails to state a claim for which relief can be granted.

Further, even if a common law duty existed, the Wyoming Recreation Safety Act eliminated any such duty to warn Mr. Morrow of the risks associated with horseback riding.  In Wyoming, when an individual such as Mr. Morrow participates in a recreational opportunity like horseback riding, they assume the inherent risks associated with the activity or opportunity, whether those risks are known or unknown. *See* Wyo. Stat. § 1-1-123(a).  In other words, when Mr. Morrow decided to take the horseback ride in question, the law deemed him on notice of *all* the associated inherent risks of horseback riding, regardless and irrespective of any steps Xanterra may have taken to inform him of the same. *See id.* Mr. Morrow also signed a release, expressly reinforcing his knowledge and understanding of the inherent risks associated with horseback riding.  *See* **Exhibit 1**, Xanterra Horseback Riding Acknowledge of Risk Form ("AOR")[1].  Dismissal of this claim is necessary.

## III.   XANTERRA OWED NO DUTY OF CARE

Mr. Morrow's claims—Counts I – IV of the Complaint—are all based in tort, and specifically in negligence.  "[D]uty is the first and essential element of any negligence action." *Tidwell*, 896 P.2d at 1325.  "Tort law proceeds from a long historical evolution of externally

---

[1] While not attached to Plaintiff's Complaint, or directly referenced therein, the AOR form should be considered with this motion.  The document is impliedly incorporated into the allegations of the Complaint, specifically by Plaintiff's reference to Xanterra providing him inadequate risk advisement at the beginning of the ride, *see* Complaint ¶¶ 16, 22; and reference to the weight limits for the ride, which information is taken directly from the AOR, *compare* Complaint ¶ 19 *with* AOR.  If the Court deems the AOR has not been impliedly incorporated into the Complaint, Defendants ask that the Court nonetheless consider this document, pursuant to Rule 12(d).

imposed duties and liabilities." *Throckmartin v. Century 21 Top Realty*, 226 P.3d 793, 804

(Wyo. 2010).  In defining duties, "the legislatures and the courts have set the parameters of social

policy and imposed them on individual members of society without their consent." *See id.*   In

Wyoming, the existence of duty is a question of law for the court to decide.  *See Tidwell*, 896

P.2d at 1325.  "[W]ithout duty, negligence is not a viable theory of recovery." *Id.*

## A.   THE WYOMING RECREATION SAFETY ACT BARS MORROW'S CLAIMS

The Wyoming Legislature has taken definitive action to set the parameters of tort liability

in the context of recreational opportunities, like the horseback ride Mr. Marrow participated in.

As discussed below, the Wyoming Recreation Safety Act, Wyo. Stat. § 1-1-121 et. seq. (the

"Safety Act") establishes as a matter of law that Xanterra owed no duty of care to Mr. Morrow in

the first instance, warranting dismissal of all Counts of the Complaint.

Today, the Safety Act reads in relevant part:

(a)     Any person who takes part in any sport or recreational opportunity
assumes the inherent risks in that sport or recreational opportunity,
whether those risks are known or unknown, and is legally responsible for
any and all damage, injury or death to himself or other persons or
property that results from the inherent risks in that sport or recreational
opportunity.

(b)     A provider of any sport or recreational opportunity is not required to
eliminate, alter or control the inherent risks within the particular sport or
recreational opportunity.

Wyo. Stat.  § 1-1-123(a)-(b).   In adopting the Safety Act, the Wyoming Legislature chose

"assumption of the risk terminology" that "was intended to limit the duty that a provider owes to

a participant." *See Cooperman*, 214 F.3d at 1165 (citing *Halpern v. Wheeldon*, 890 P.2d 562,

565 (Wyo. 1995)).   The effects of this primary assumption of the risk terminology on Mr.

Marrow's negligence causes of action here are significant:

> If the doctrine of primary assumption of risk is applicable, a defendant cannot be liable to a plaintiff, **'because there is no negligence on the part of the defendant to begin with; the danger is not one which defendant is required to extinguish or warn about; having no duty to begin with, there is no breach of duty to constitute negligence.**'

*Id.* (emphasis added) (quoting Catherine Hansen-Stamp, *Recreational Injuries and Inherent Risks: Wyoming's Recreational Safety Act-An Update*, 33 Land & Water L. Rev. 249, 253 (1998)).

The Wyoming Supreme Court's only opportunity to address and interpret the Safety Act came in *Halpern*.  There, the Plaintiff was injured when his horse bucked during an attempted mount, throwing him to the ground.  *See* 890 P.2d at 563-64.  The court denied the defendant's summary judgment motion, finding that there was a genuine issue as to whether the ranch owner could have reasonably eliminated, altered or controlled the risk of injury plaintiff encountered. *Id.* at 566.  The court based its holding, in part, on the Safety Act's original definition of "inherent risk" which meant "any risk that is characteristic of or intrinsic to any sport or recreational opportunity *and which cannot reasonably be eliminated, altered or controlled*." Wyo. Stat. Ann. § 1-1-122(a)(i) (1989) (emphasis added).   Responding to the analysis in *Halpern*, the Wyoming Legislature eliminated the inquiry into whether a particular inherent risk could be controlled through reasonable means, *see Cooperman*, 214 P.3d at 1166 n.3, and struck

the emphasized language from the definition of inherent risk[2]. *See id.* This response was and is significant, particularly for Mr. Morrow's claims. Under the original language of the Safety Act, Mr. Morrow could recover for injuries arising out of an inherent risk if, as he attempts to here, he established that the risk could have been reasonably eliminated, altered or controlled. *See* Hansen-Stamp, *supra* at 270. Today, however, the Safety Act's plain language states that providers like Xanterra have no duty to "eliminate, alter or control" the inherent risks of a recreational opportunity, including the July 6, 2010 guided horseback ride to Cookout. § 1-1-123(b). In other words, Mr. Morrow's negligence claims cannot survive simply by suggesting that a particular injury could have been prevented because the risk of injury faced could have been reasonably eliminated or controlled. As a result of legislative changes following *Halpern*, actions resting upon an allegation that the Defendants reasonably should or could have "eliminated, altered or controlled" an inherent risk fail as a matter of law. *See id.*

### B.   INHERENT RISK ANALYSIS

Whether Mr. Morrow can pursue his negligence claims hinges on the facts pled in the Complaint, and whether they give rise to a duty under the Safety Act. *See Cooperman*, 214 F.3d at 1166. In the end, this analysis turns on the definition of "inherent risk". Wyoming has not listed within the Safety Act what risks are inherent to a guided horseback trail ride, leaving courts the ultimate task of making such determinations. *See Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1102 (10th Cir. 2002). According to the Tenth Circuit, an inherent risk is one of two

---

[2] Today, the Safety Act defines an "inherent risk" as "those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Wyo. Stat. § 1-1-122(a)(i).

things: either (1) those risks which are essential characteristics of a sport and those which participants wish to confront, or (2) the undesirable risks which are simply a collateral part of the recreational activity. *See Cooperman*, 214 F.3d at 1166-67. All horseback riding "undoubtedly" carries some inherent risk that the participant may fall off their horse. *See Cooperman*, 214 F.3d at 1167. Here, however, the Court must consider the encountered risk at the most factually specific level permitted by the Complaint. *See id.*; *Carden v. Kelly*, 175 F. Supp. 2d 1318, 1328 (D. Wyo. 2001); *Sapone*, 308 F.3d at 1103. Focusing only on the facts purportedly establishing the legal prerequisite of duty, "we do not ask if the defendant was negligent in any of its actions with regard to the plaintiff." *Cooperman*, 214 F.3d at 1167 n.4; *see* Wyo. Stat. § 1-1-123(b).

Here, Mr. Morrow brought a water bottle with him on the ride he took to Cookout. Complaint ¶ 26. He drank from the water bottle the entire way. *Id.* ¶ 27. After dinner, and aboard Dually, Mr. Morrow again chose to bring his water bottle out. *Id.* ¶ 33. When wranglers noticed the bottle, they asked Mr. Morrow to give it to them, and he complied. *Id.* ¶¶ 33, 35. The wrangler he gave the bottle to allegedly lifted the bottle over her head, and as she gripped the bottle it made a crinkling sound. *Id.* ¶ 36. Mr. Morrow's horse spooked as a result of the crinkling sound, bucking twice in response, and causing Mr. Morrow to fall from his saddle and to the ground. *Id.* ¶¶ 37-38. Framing the issue properly, for purposes of this motion to dismiss, the issue to address is whether a horse bucking in response to a water bottle crinkling in a wrangler's hand is an inherent risk of a recreational horseback ride when the participant made the water bottle a part of the environment of stimuli the horse was exposed to.

Based on the *nature* of the risk of injury encountered, Mr. Morrow's negligence claims must be dismissed because Xanterra owed no duty of care under the Safety Act. There can be no question that horses are unpredictable animals, making it impossible for anyone to forecast how or to what the animal will react to in a given situation *See Cooperman*, 214 F.3d at 1167 (noting horses may "simply begin to gallop for no apparent reason."). Further, both as a matter of common sense, as well as a matter of law, horseback riding certainly carries with it a risk that the horse will buck. *See id.* (noting horse rearing unexpectedly is an inherent risk of horseback riding). Working back from the moment of Mr. Morrow's injury, we immediately see that this risk manifested itself in Mr. Morrow's case. The event that displaced Mr. Morrow from his horse, causing him to fall and become injured, was not a wrangler's push, a loose cinch, equipment malfunction, or a saddle slipping. It was his horse bucking. Incorporating the facts pled, it's clear that the horse bucked as a response to environmental stimuli encountered during the course of the ride, in that the horse unpredictably reacted to a water bottle crinkling at Cookout. Significantly, the sound came from an object that Mr. Morrow, not Xanterra, introduced to the ride, despite his acknowledgement and understanding at the beginning of the ride that "horses act unpredictably." *See* **Ex. 1**, AOR. Mr. Morrow made the decision to bring the bottle with him on July 6, 2010, and to introduce it to the ride. The water bottle as a result became another source of stimuli that could potentially prompt the horse to react, the same role Mr. Morrow's jacket, as well as the vegetation and wildlife existing in the park's surrounding environs, played in the ride. That a participant may introduce stimuli into the environment, such as a water bottle, that causes a horse to react by bucking unexpectedly and unpredictably is an

undesirable risk that is a collateral part of the guided horseback ride Mr. Morrow participated in, bringing this case directly within the category of matters that the Safety Act bars.  Here, the facts show that Wyoming law charged Mr. Morrow with notice of all known and *unknown* inherent risks of horseback riding.  *See* § 1-1-123(a)-(b).  Here, *why* the horse bucked can only be explained in terms of inherent risk, and not a wrangler or Xanterra's negligence.  Pursuant to Wyoming law, Mr. Morrow is responsible for his own injuries, and his negligence claims must be dismissed.

## IV.    PUNITIVE DAMAGES ARE NOT WARRANTED

Mr. Morrow's Complaint demands punitive damages, pursuant to a conclusory, formulaic recitation of the elements of the same.  This claim, too, must be dismissed.

In Wyoming, "[p]unitive damages are not favored and are to be allowed cautiously within narrow limits."  *See Alexander v. Meduna*, 47 P.3d 206, 218 (Wyo. 2002).  "Such damages are to be awarded only for conduct involving some element of outrage similar to that usually found in a crime."  *Id.*  This narrow application comports with the purpose of such damages, which is "not to provide a windfall to plaintiffs and their attorneys, but is to publicly condemn some notorious action or inaction on the part of the defendant."  *Weaver v. Mitchell*, 715 P.2d 1361, 1370 (Wyo. 1986).  Under Wyoming law, "[p]unitive damages are not appropriate in circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence."  *Id.*

Mr. Morrow's Complaint, and the pled facts therein, fundamentally fail to establish a plausible claim for punitive damages.  Taking the factual statements in the Complaint as true, the allegations at most suggest inattention or thoughtlessness, which is insufficient under Wyoming

law, falling fall short of notorious conduct warranting public condemnation. *See id.* Further, Mr. Morrow does not plead any claims for relief, or allege any specific facts is support to establish a claim for an intentional tort, willful misconduct, or any claim involving an element of outrage akin to criminal conduct. The closest Mr. Morrow comes to meeting this requirement is stating in conclusory, legal terms, unsupported by alleged facts, his entitlement to punitive damages, *see* Complaint ¶ 83. Such a broad, and general statement is insufficient to support a claim for punitive damages. *See Kan. Penn Gaming, LLC*, 656 F.3d at 1214 ("[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."). As such, Mr. Morrow's punitive damages claim must be dismissed.

## V.   MR. TODD CANNOT BE HELD LIABLE

Finally, Mr. Morrow sued Andrew Todd, President of Xanterra, in his individual capacity. An officer of a corporation is liable to a third party like Mr. Morrow only if he or she directs or participates actively in the commission of a tortious act. *Zimmerman v. First Federal Sav. and Loan*, 848 F.2d 1047, 1052 (quoting *Lobato v. Pay Less Drug Stores*, 261 F.2d 406, 408 (10th Cir. 1958)). To hold Mr. Todd liable here, there must be a showing of "specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party...." *Id.* (internal quotation marks omitted). Although "Wyoming courts have not spoken on the duty of corporate directors to third parties", the Tenth Circuit has held that "Wyoming courts would apply the general rule ... stated in *Lobato*." *Id.*

Here, the Complaint does not contain a single factual allegation that Mr. Todd in any way directed or actively participated in the claimed tortious acts. *See* Complaint ¶¶ 9 – 46. Mr. Morrow makes no allegations that Mr. Todd made any representations personally, failed to disclose any information, or had any direct supervisory responsibilities for any of the wranglers or staff present at Roosevelt on the day in question. There are no allegations that Mr. Todd was even present at Yellowstone on July 6, 2010, or at the Roosevelt Corals when Mr. Morrow checked in for his ride, let alone any evidence that Mr. Todd actively participated in any facet of the conduct alleged. The Complaint fails to state any plausible claim for relief against Mr. Todd, requiring that the Court dismiss Mr. Todd from this suit. *See* F.R.C.P. 12(b)(6); *Kan. Penn Gaming, LLC*, 656 F.3d at 1214.

## CONCLUSION

Based on the arguments and authorities herein, Defendants request that this Court dismiss Plaintiff's Complaint in its entirety, under F.R.C.P. 12(b)(6) for failure to state claims upon which relief can be granted.

Dated this 26th day of July, 2012.

Respectfully submitted,

LATHROP & GAGE LLP

By:   _s/ Angela L. Ekker_
        Angela L. Ekker, Wyo. #5-2474
        US Bank Tower
        950 17th Street, Suite 2400
        Denver, Colorado 80202
        Phone:    (720) 931-3200
        Fax:      (720) 931-3201
        Email:    aekker@lathropgage.com

        *Attorneys for Defendants Xanterra Parks &*
        *Resorts, Inc. and Andrew Todd*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2012, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Gerard R. Bosch, Esq.
M. Alison Floyd, Esq.
Law Offices of Jerry Bosch, LLC
P. O. Box 872
Wilson, WY  83014
250 Veronica Lane
Jackson, WY  83002
Email:    jerry@wyo-law.com
           alison@wyo-law.com

        _s/ Angela L. Ekker_
        Angela L. Ekker